IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| HARD ROCK CAFÉ INTERNATIONAL (USA), INC., § § § Plaintiff, § § v. § § DANIEL BAKKER D/B/A BEIJING PINS, § § Defendant. § | C.A. NO. _____ |

## CIVIL COMPLAINT

Plaintiff Hard Café International (USA), Inc. ("Plaintiff" or "Hard Rock Café") files this Complaint against Defendant Daniel Bakker d/b/a Beijing Pins ("Defendant" or "Bakker") and for cause would show the Court the following:

### JURISDICTION, PARTIES AND VENUE

1. This is an action for trademark counterfeiting, trademark infringement, and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act").

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.

3. The Court has personal jurisdiction over Defendant Bakker because Defendant is conducting business in this State; Defendant's acts of trademark counterfeiting, trademark infringement and unfair competition are occurring in this State; and Defendant should reasonably anticipate being haled into court in this State.

4. Plaintiff Hard Rock Café is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 6100 Old Park Lane, Orlando, Florida 32835.

5. On information and belief, Defendant Daniel Bakker d/b/a Beijing Pins is an individual and a resident of the State of Missouri, and he conducts business in this State. Defendant Bakker may be served with process at his residence at 517 West College Street, Branson, Missouri 65616.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Hard Rock Café's claims occurred in this District, and because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND FACTS

7. Plaintiff Hard Rock Café is an international leisure, entertainment and hospitality business operating, managing, licensing and/or franchising Hard Rock Cafés, Hard Rock Hotels and Hard Rock Casinos under the famous Hard Rock Marks. Started in 1971, Hard Rock Café has grown internationally in North and South America, Europe, Middle East and Asia, with 152 venues in 52 countries around the world, including 136 cafés and 16 hotels/casinos. In its almost forty years of existence, Hard Rock Café has become a destination for entertainment, including live concerts and special events featuring some of the most prominent musicians and artists in the world.

8. As part of its business, Hard Rock Café sells merchandise to consumers, including clothing, glassware, jewelry and pins. Many of these items, such as the pins, have become collectors' items and are highly sought after. Hard Rock Café's merchandise includes one or

more of Hard Rock's approximately two thousand, nationally and internationally registered trademarks.

9. Hard Rock owns U.S. Registration No. 1,492,907, together with all common-law rights, in the mark "HARD ROCK CAFÉ" & Design for "jewelry, namely decorative pins, tie pins, lapel pins of nonprecious metal" based on use since at least as early as 1985.

10. Hard Rock owns U.S. Registration No. 2,478,328, together with all common-law rights, in the mark "HARD ROCK" for "retail store services featuring clothing, pins, photographs, artwork and jewelry" based on use since at least as early as March 31, 2001 (the "HARD ROCK CAFÉ" & Design and "HARD ROCK" marks are collectively referred to as the "Hard Rock Marks").

11. Hard Rock Café's federal registrations for the Hard Rock Marks are in full force and effect and have been in full force and effect at all times relevant hereto.

12. As a result of the company's popularity and fame, the Hard Rock Marks have become widely recognized for restaurants, hotels and casinos, along with merchandise, including clothing, glassware, jewelry and pins.

13. Hard Rock Café has developed an outstanding reputation in the international leisure, entertainment and hospitality industries. Moreover, the Hard Rock Marks identify high quality goods and services originating exclusively from Hard Rock Café. Hard Rock Café has used and is using the Hard Rock Marks on its pins.

14. Hard Rock Café has expended significant time, skill, effort, and money creating and designing many pins over the years. The company designs new pins on an ongoing basis.

15. On information and belief, Defendant Bakker conducts business under one ore more assumed names, including Beijing Pins.

16. On information and belief, Defendant Bakker is offering for sale and selling pins bearing the Hard Rock Marks in interstate commerce, including in this District. On information and belief, Defendant Bakker is offering for sale and selling pins bearing the Hard Rock Marks on the Internet, including through eBay auction sites.

17. Defendant Bakker's activities include the unauthorized adoption and use of the Hard Rock Marks on pins that are not manufactured by or on behalf of Hard Rock Café.

18. Hard Rock Café has never authorized Defendant Bakker to adopt and/or use the Hard Rock Marks for any reason or in any manner, including without limitation, with the ordering, manufacture, purchase, importation, shipping, advertising, offer for sale, sale, delivery and/or distribution of unauthorized, counterfeit Hard Rock Café pins.

19. On information and belief, Defendant Bakker began ordering, manufacturing, purchasing, importing, shipping, advertising, offering for sale, selling, delivering and/or distributing pins bearing counterfeit versions of one or more of the Hard Rock Marks long after Hard Rock Café adopted and began using the Hard Rock Marks with Hard Rock Café's goods and services.

20. On information and belief, Defendant Bakker's sister, Marlee Bakker, is working with, for, or in competition with her brother in Branson, Missouri to order, manufacture, purchase, import, ship, advertise, offer for sale, sell, deliver and/or distribute pins bearing counterfeit versions of one or more of the Hard Rock Marks in interstate commerce, including in this District.

21. Hard Rock Café purchased numerous pins bearing the Hard Rock Marks from Defendant Bakker. Hard Rock Café representatives inspected each of the pins purchased from Defendant Bakker and determined that all of them are counterfeit.

4

HOUDMS/285239.1

22. Some of the counterfeit pins that Hard Rock Café purchased from Defendant Bakker list cities where Hard Rock Café does not own or operate an establishment.

23. Hard Rock representatives observed that the counterfeit pins bearing the Hard Rock Marks that Hard Rock Café purchased from Defendant Bakker are of lesser quality than genuine Hard Rock Café pins.

24. As a result of Defendant Bakker's illegal activities, individually, and/or in concert with others, Hard Rock Café is not able to monitor the use of its Hard Rock Marks on goods that Defendant Bakker orders, manufactures, purchases, imports, ships, advertises, offers for sale, sells, delivers and/or distributes. In addition, Hard Rock Café is not able to enforce or maintain its high quality control standards for goods that Defendant Bakker orders, manufactures, purchases, imports, ships, advertises, offers for sale, sells, delivers and/or distributes.

25. As a further result of Defendant Bakker's illegal activities, unsuspecting pin collectors, as well as the public at large, purchase what they believe are authentic, limited-quantity Hard Rock pins based on Defendant Bakker's eBay auction listings. Later, they find out that there is in fact no Hard Rock establishment located in the city identified on the pin; the pin refers to a venue where Hard Rock has never advertised, such as an Olympic game; or the pin is co-branded with another brand, such as a cartoon character (Snoopy, Jessica Rabbit or the Simpsons) with whom Hard Rock does not have any licensing or sponsorship relationship.

26. As a further result of Defendant Bakker's illegal activities, Hard Rock Café is exposed to liability for trademark infringement claims from third parties. The third-party owners of trademarks (Snoopy, Jessica Rabbit, the Simpsons, etc.) may believe that Hard Rock has combined the third party's brand names, trademarks and intellectual property with the Hard Rock

Marks on the pins to mistakenly imply an association, partnership or sponsorship relationship between the third-party brand/trademark owner and Hard Rock.

## COUNT I
## TRADEMARK COUNTERFEITING

27. Hard Rock Café repeats and realleges the allegations contained in Paragraphs 1 through 26 as if fully set forth herein.

28. Defendant Bakker has used and is using counterfeit marks and/or spurious designations that are identical to or substantially indistinguishable from Plaintiff's Hard Rock Marks on pins.

29. On information and belief, Defendant Bakker intentionally and willfully has used and is using the counterfeit marks and/or spurious designations knowing that they are counterfeit marks in connection with the order, manufacture, purchase, importation, shipment, advertising, offer for sale, sale, delivery and/or distribution of Defendant Bakker's pins.

30. Defendant Bakker's unauthorized adoption and use of the Hard Rock Marks on pins is likely to cause confusion, mistake and deception. Specifically, Defendant Bakker's unauthorized adoption and use of the Hard Rock Marks on pins is likely to cause the public to believe that Defendant Bakker's pins originate with Hard Rock Café, when they do not, or that Defendant Bakker is affiliated, connected or associated with, or in some way related to, Hard Rock Café, when he is not.

31. Defendant Bakker's unauthorized adoption and use of the Hard Rock Marks on pins has resulted and is likely to result in Defendant Bakker unfairly profiting from the reputation of Hard Rock Café and its Hard Rock Marks, all to the substantial and irreparable injury of Hard Rock Café, the Hard Rock Marks, the substantial goodwill represented thereby, and the public.

6

HOUDMS/285239.1

Case 6:11-cv-03003-RED   Document 5   Filed 01/05/11   Page 6 of 13

32. Defendant Bakker's acts were/are deliberately calculated to confuse and to deceive the public and were/are performed with full knowledge of Hard Rock Café's exclusive rights in the Hard Rock Marks. Defendant Bakker's acts constitute willful and deliberate violations of Hard Rock Café's exclusive rights in the Hard Rock Marks.

33. Defendant Bakker's acts alleged herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

34. As a consequence of Defendant Bakker's acts, Hard Rock Café has suffered and is suffering substantial damages, and Defendant Bakker has acquired profits at Hard Rock Café's expense.

35. The foregoing acts of Defendant Bakker have caused Hard Rock Café irreparable harm, loss and injury. Unless enjoined, Defendant Bakker's acts alleged herein will continue to cause Hard Rock Café irreparable harm, loss, and injury.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT

36. Hard Rock Café repeats and realleges the allegations contained in Paragraphs 1 through 35 as if fully set forth herein.

37. The acts of Defendant Bakker alleged herein constitute trademark infringement in violation of 15 U.S.C. § 1114.

## COUNT III
## FEDERAL UNFAIR COMPETITION

38. Hard Rock Café repeats and realleges the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39. The acts of Defendant Bakker alleged herein constitute the use in commerce of a false designation of origin and false and/or misleading descriptions or representations tending to

7

falsely or misleadingly describe and/or represent Defendant Bakker's pins as originating from Hard Rock Café in violation of 15 U.S.C. § 1125(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hard Rock Café prays for a judgment that:

A. Defendant Bakker has adopted, used and is using counterfeit Hard Rock Marks in violation of 15 U.S.C. § 1114;

B. Defendant Bakker has infringed and is infringing the Hard Rock Marks in violation of 15 U.S.C. § 1114;

C. Defendant Bakker's acts constitute willful trademark counterfeiting and willful trademark infringement in violation of 15 U.S.C. § 1114;

D. Defendant Bakker's acts constitute the use in commerce of a false designation of origin and false and/or misleading descriptions or misrepresentations in violation of 15 U.S.C. § 1125(a);

E. Hard Rock Café be awarded statutory damages under 15 U.S.C. § 1117(c) of up to $1,000,000 for each Hard Rock Mark that Defendant Bakker has used with a counterfeit or unauthorized product;

F. Alternatively, Defendant Bakker be ordered to account to Hard Rock Café for all profits resulting from Defendant Bakker's infringing activities, and that the award to Hard Rock Café be trebled under 15 U.S.C. § 1117;

G. Defendant Bakker be ordered to deliver up for destruction to Hard Rock Café all unauthorized goods and materials bearing the Hard Rock Marks or colorable imitations of the Hard Rock Marks and the means for producing them pursuant to 15 U.S.C. § 1118;

8

HOUDMS/285239.1

Case 6:11-cv-03003-RED   Document 5   Filed 01/05/11   Page 8 of 13

H. The Court preliminarily and permanently restrain and enjoin Defendant Bakker, his officers, agents, servants, employees, attorneys, and all other persons acting in concert and/or participation with them, who receive actual notice of the Court's order, by personal service or otherwise, from:

(1) Using in any manner any of the Hard Rock Marks, alone or in combination with any word or words that so resemble any of the Hard Rock Marks, as to be likely to cause confusion, deception or mistake by the consuming public;

(2) Ordering, manufacturing, purchasing, importing, shipping, advertising, offering for sale, selling, delivering, distributing, printing or receiving any items, goods or things not authorized by or on behalf of Hard Rock Café and bearing any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks;

(3) Returning, forwarding, secreting, destroying or otherwise disposing of, in any manner, any items, goods or things not authorized by or on behalf of Hard Rock Café and bearing any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks;

(4) Selling or passing off any items, goods or things not authorized by or on behalf of Hard Rock Café and bearing any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks;

(5) Removing or covering up any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks from any items, goods or things in the restrained persons' possession, custody or

9

control, and from returning, forwarding, secreting, destroying, or disposing of, in any manner, any items, goods or things from which the restrained persons have removed or covered up any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks;

(6) Returning, forwarding, secreting, removing, destroying, or otherwise disposing of any machinery, apparatus, business records, documents or other items, goods or things (including without limitation, packaging, printed graphics, promotional and advertising materials) relating to the order, manufacture, purchase, importation, shipping, advertising, offer for sale, sale, delivery, distribution, printing or receipt of any items, goods or things not authorized by or on behalf of Hard Rock Café and bearing any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks;

(7) Altering, removing or cancelling any account information, sales or payment history with a financial institution, payment service and/or auction site, including without limitation, eBay and PayPal, relating to the above activities;

(8) Committing any acts calculated to cause consumers to believe that any of the Defendant's items, goods or things bearing any of the Hard Rock Marks or any counterfeit, copy, image or designation that is a colorable imitation of any of the Hard Rock Marks are genuine or are otherwise authorized by or on behalf of Hard Rock Café unless they are in fact genuine or are otherwise authorized by or on behalf of Hard Rock Café;

(9) Directly or indirectly contacting, communicating with or otherwise warning any customer, manufacturer, distributor, supplier, officer, agent, servant, employee,

partner, investor or co-conspirator of the restrained persons regarding the existence of this lawsuit prior to the hearing on Plaintiff's Motion for Preliminary Injunction; which shall not, however, prevent or hinder Defendant Bakker from retaining legal counsel to represent him in this action;

(10) Otherwise competing unfairly with Hard Rock Café in any manner; and

(11) Inducing, enabling, attempting, causing, or assisting any person or entity to do any of the above-described acts.

I. Within thirty (30) days of the Court entering judgment, Defendant Bakker be ordered to file and serve Hard Rock Café's counsel with a sworn statement setting forth in detail the manner and form in which Defendant Bakker has complied with this injunction pursuant to 15 U.S.C. § 1116(a);

J. Hard Rock Café recover from Defendant Bakker the costs, disbursements of this action and Hard Rock Café's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

K. Defendant Bakker be ordered to pay pre-judgment interest to Hard Rock Café on all amounts awarded and post-judgment interest on all amounts unpaid at the maximum lawful rate;

L. The Court retain jurisdiction of this action for the purpose of enabling Hard Rock Café to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action; for the modification of any such order; for the enforcement or compliance therewith; and for the punishment of any violations thereof; and

M. Hard Rock Café have all other relief at law and in equity that the Court may deem as just and proper under the circumstances.

Dated: January _____, 2011          Respectfully submitted,

POLSINELLI SHUGHART PC


_____
John M. Tyner
Bar No. KS-000583
Email: jtyner@polsinelli.com
Polsinelli Shughart PC
901 St. Louis, Suite 1200
Springfield, MO 65806
Telephone No. (417) 869-3353
Facsimile No. (417) 869-9943

and

BAKER & McKENZIE LLP


_____
Lisa H. Meyerhoff
Texas Bar No. 14000255
Email: Lisa.Meyerhoff@bakermckenzie.com
Myall S. Hawkins
Texas Bar No. 09250320
Email: Myall.Hawkins@bakermckenzie.com
BAKER & McKENZIE LLP
Pennzoil Place, South Tower
711 Louisiana, Suite 3400
Houston, TX 77002-2746
Telephone No. 713 427 5000
Facsimile No. 713 427 5099

ATTORNEYS FOR PLAINTIFF HARD ROCK CAFÉ INTERNATIONAL (USA), INC.

## VERIFICATION

STATE OF FLORIDA      )
                      )
COUNTY OF ORANGE      )

      Gian C. Bonfanti, Director of Buying at Hard Rock Café International (USA), Inc., being first duly sworn under oath, presents that he is a Director for Hard Rock Café International (USA), Inc.; he makes this Verification for and on behalf of Plaintiff Hard Rock Café International (USA), Inc.; he has read the foregoing Civil Complaint; and the matters and things contained therein are true and correct and based on his personal knowledge.

_____
Gian C. Bonfanti

SUBSCRIBED AND SWORN TO before me this 4th day of January 2011.

_____
Notary Public in and for the
State of Florida

Notary Public State of Florida
Teresa Steen
My Commission EE026906
Expires 11/24/2014